## MARSHALL FIELD ET AL.

### v.

## NATHAN BERLIZHEIMER ET AL.

</div>

1. DEBT CREATED BY FRAUD OF BANKRUPT.—Where the debt was created by the fraud of the bankrupt—as by making false statements whereby to obtain credit, the fact that the creditor has accepted part payment of the debt, and continued to deal with the debtor, will not affect his right to recover under the provisions of the bankrupt law excepting a fraudulent debt from the operation of a discharge in bankruptcy.

2. DEBT PARTLY FRAUDULENT AND IN PART BONA FIDE.—It is not the theory of the law that fraud in the creation of the debt *avoids* the discharge, but merely that as to such indebtedness the discharge has no application; so, where the debt is made up of items, some fraudulent and others *bona fide*, the discharge would be inoperative as to the former, and valid as to the latter. An instruction that it must be shown that the debt *as a whole* was created by fraud, is therefore erroneous.

3. SEPARATION OF FRAUDULENT ITEMS FROM THOSE BONA FIDE.—An instruction that unless the jury are able to distinguish how much of the debt was fraudulent, and how much *bona fide*, they must find for the defendant, is erroneous. If the evidence showed that any part or item was created by fraud, then as to that, the plaintiff's were entitled to recover, although as to other items there may have been doubt.

4. FRAUD AS AN INDUCEMENT TO THE DEBT.—It is not necessary to show that the plaintiffs parted with their property *entirely* upon the strength of the false representation made. The fraud that will support an action or become ground for relief, should be material in its nature, and a *determining*

ground of the transaction, but it is nowhere held that it must be the sole and *exclusive* motive by which the party defrauded is induced to act.

5. FRAUDULENT REPRESENTATION ACTS UPON FUTURE SALES.— The question of fraud does not depend upon whether the defendants, at the time of making the different purchases, made them in good faith, without any false representations as to their financial ability; but upon whether, in the writing set out, they knowingly made material misrepresentations, and the plaintiffs, replying upon their truth, were thereby induced to sell the goods to defendants on credit.

6. RESCISSION OF SALE.—Where a party claims the right of rescission he must act promptly, and exercise that right upon discovery of the fraud; and if after discovery of the fraud he elects to affirm the contract, the right of rescission is gone.

APPEAL from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.    Opinion filed November 29, 1881.

This was an action of assumpsit, brought by Marshall Field and others against Nathan Berlizheimer and another, to recover a balance claimed to be due the plaintiffs upon an account for merchandise sold and delivered by them to the defendants. The defendants pleaded a discharge in bankruptcy, and to this plea the plaintiffs replied that the defendants, for the purpose of inducing the plaintiffs to sell them said merchandise on credit, made to the plaintiffs a statement in writing of their financial condition and standing, and therein and thereby stated and represented to the plaintiffs that they then had in their store a stock of merchandise of the value of $10,-000, and had good notes and accounts of the value of $150; that they were indebted to the International Bank of Chicago for borrowed money in the sum of $500, and to other persons besides the plaintiffs, for merchandise in the sum of $987.67, which said sums were all the defendants then owed; that relying upon said statements of the defendants, and believing them to be true, the plaintiffs sold and delivered to the defendants the merchandise in question on credit; that said statement, at the time it was made, and at the time of the sale and delivery of said merchandise, was wholly untrue, false and fraudulent; that the defendants did not then have a stock of merchandise of the value of $10,000, but that their stock then

on hand was worth only about $4,000; that the defendants then owed for borrowed money about $4,000, over and above the said $500 mentioned in said statement, all of which was then and there well known to the defendants; and that said statement was falsely and fraudulently made by the defendants for the purpose, and with the intent on their part, of cheating and defrauding the plaintiffs out of their said merchandise.

On the trial before a jury, it appeared in evidence that the defendants being already considerably indebted to the plaintiffs, and desiring further credit, were requested by the plaintiffs to make a statement of their financial conditions, and that in response to such request, Nathan Berlizheimer, one of the defendants, came to the plaintiffs' store, where a statement in substance as charged in the plaintiffs' replication, was drawn up, and signed by said Nathan Berlizheimer, it being therein declared that said statement was made for the purpose of obtaining credit with the plaintiffs for merchandize, which the defendants might then or thereafter purchase of them.

Subsequently, and on the faith of said statement, as is claimed, the plaintiffs, from time to time, sold the defendants merchandize on credit, and the defendants made to the plaintiffs sundry payments, by which the indebtedness existing at the date of the statement was extinguished, and the subsequent account reduced to $815.60. Evidence was also introduced tending to show that at the time said statement was made, the defendants' stock of goods was worth much less than the sum represented, and also, that they were then indebted to one Lowenthal, for borrowed money, in the sum of about $4,000, and that said indebtedness still remained unpaid.

Among the instructions given to the jury by the court at the instance of the defendants were the following:

" 3. The court instructs the jury as a matter of law, that although they find from the evidence in this case that the defendant obtained a credit by false representations in writing made and by him signed, and that such credit so obtained led to the debt upon which this suit is brought; yet, if they further find that the plaintiffs became apprised and knew of the

Field v. Berlizheimer.

fraud practiced upon them, and with such knowledge accepted part payment of such debt, and continued to do business with the defendant, and subsequently instituted this suit to recover the unpaid balance, that then, in the law, such fraud is waived and confirmed, and your verdict must be for the defendants.

"5. The court instructs the jury that before a discharge in bankruptcy can be avoided upon the ground that the debt was created by the fraud of the bankrupt, it must be shown by a preponderance of evidence that the debt, as a whole, was created by fraud; and that if, from the evidence in this case, you find that the debt sued upon is made up in part of an honest debt and in part of a fraudulent debt, and you are unable to distinguish, and by your verdict say how much of said debt was created in fraud, your verdict must be for the defendant.

"6. The court instructs the jury that before they will be justified in finding against the discharge in bankruptcy, it must have been shown by a preponderance of evidence that the statement made was in the main or in some essential matter false and untrue; that the defendant knew it to be false and untrue when he signed it; that he, knowing it to be so, gave it to the plaintiffs for the purpose of inducing them to part with their property, and that the plaintiffs parted with their property entirely upon the strength of this statement; and that the plaintiffs, at the time of parting with their property upon the strength of this statement, believed it to be true, and that the defendant, as stated, knew it to be false and untrue.

"7. The court instructs the jury that if, from the evidence, they believe that the defendant, at the time of making the different purchases going to make up the debt for which this suit was brought, made such purchases in good faith, intending to pay the same, and did not make any false statement or statements respecting their financial standing or ability, to induce the plaintiffs to sell the goods to him, then your verdict must be for the defendant."

The foregoing instructions were duly excepted to by the plaintiffs. The verdict of the jury was for the defendants, and the court, after denying the plaintiffs' motion for a new trial, gave judgment in favor of the defendants for costs.

Mr. GEORGE W. PLUMMER, for appellants; that where the verdict is clearly against the preponderance of evidence a new trial will be granted, cited Ill. Cent. R. R. Co. v. Chambers, 71 Ill. 519; Blake v. McMullin, 91 Ill. 32; Gordon v. Crooks, 11 Ill. 142; C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; Reynolds v. Lambert, 69 Ill. 495; Chicago v. Lavalle, 83 Ill. 482; Drury v. Dungan, 2 Bradwell, 15.

Upon discovery of the fraud a party may rescind the contract, or he may affirm it and claim compensation for the injury he has sustained by the fraud: Peck v. Brewer, 48 Ill. 54; Herrin v. Libby, 36 Me. 350; Whitney v. Allain, 1 Comst. 305.

An instruction upon a state of facts which there is no evidence to prove, is erroneous: Bradley v. Parks, 83 Ill. 169; American v. Rimpert, 75 Ill. 228; Howe S. M. Co. v. Layman, 88 Ill. 39.

It is not proper in an instruction to submit to the jury the question of a party's rights under a contract: Belding v. Woodmansee, 81 Ill. 25; Ogden v. Kirby, 79 Ill. 555; Kamphouse v. Gaffner, 73 Ill. 453; C. B. & Q. R. R Co. v. Hale, 2 Bradwell, 150; Shugart v. Halliday, 2 Bradwell, 45.

It is only necessary to show that the goods were sold, and credit given by reason of the representatives made: 2 Parsons on Con. 773; Addington v. Allen, 11 Wend. 374; Young v. Hall, 4 Ga. 95; King v. Fitch, 2 Abb. Ct. App. 508.

If a party makes a representation which he knows to be false, and which is calculated to induce another to act, and thereby occasions an injury, the law implies fraud: McBean v. Fox, 1 Bradwell, 177; Frenzel v. Miller, 37 Ind. 1; Elder v. Allison, 45 Ga. 13; Foster v. Charles, 6 Bing. 396.

Mr. JAMES GOGGIN, for appellees.

BAILEY, J. The only questions we need consider in this case are those which arise upon the instructions given to the jury at the instance of the defendants. The language of the third instruction is not altogether free from ambiguity, but, as we understand it, and as the jury probably understood it, it holds that, even if the evidence shows that the defendants, by

false representations, obtained credit for the merchandise in question, and thus incurred the debt for which the suit is brought, yet, if it further appears that the plaintiffs afterwards became apprised and knew of such fraud, and with such knowledge accepted part payment of the debt so incurred, and continued to do business with the defendants, and instituted this suit to recover the unpaid balance, then in law the fraud is waived and confirmed, and the verdict must be for the defendants.

If the question were, whether the plaintiffs could rescind the contract of sale on the ground of fraud and reclaim the goods sold, the rules of law sought to be invoked by this instruction might possibly have some application.   Where a party claims the right of rescission, he undoubtedly must exercise that right promptly after the discovery of the fraud, and he cannot at the same time occupy the inconsistent positions of availing himself of the fruits of the contract and attempting to rescind it.   If, after discovering the fraud, he elects to affirm the contract, the right of rescission is gone.   No such question, however, arises here.   Section 5,117 of the Revised Statutes of the United States, provides that no debt *created* by fraud of the bankrupt shall be discharged by proceeding in bankruptcy, and the question here is, whether the debt in this case was in fact *created* by the fraud of the defendants.   If it was, then, by the express terms of the statute, it was excepted from the operation of the discharge in bankruptcy.   It seems too clear for argument, that acceptance of part payment, an attempt to enforce collection of the residue, and continuing to deal with the fraudulent debtor, can have no possible bearing upon this question.   These acts, it is true, so far as they have any significance at all, are in affirmance of the sale, and manifest an election to hold the vendee for the purchase-money; but all this is entirely in harmony with the statute.   The provision that the bankruptcy proceedings shall not discharge the debt, necessarily implies and presupposes the continued subsistence of the debt as a liability capable of enforcement against the bankrupt.   A rescission would cancel it, so as to leave no debt to survive the discharge.

The proposition laid down in the first part of the fifth instruction is clearly erroneous. It is "that before a discharge in bankruptcy can be avoided upon the ground that the debt was created by the fraud of the bankrupt, it must be shown, by a preponderance of the evidence, that the debt *as a whole* was created by fraud." It may be remarked that it is not the theory of the law that fraud in the creation of the debt *avoids* a discharge in bankruptcy, but merely that as to such indebtedness, the discharge has no application. Where, then, the debt is an account made up of various items, it is clear that some items may have been created by fraud while the others may be honest and *bona fide*. In such a case, the discharge would be inoperative as to the fraudulent items, and valid as to the residue. By the language of the instruction, however, the jury were warranted in supposing that they were to treat the indebtedness in suit as an indivisible whole, and that if they found any part of it honestly contracted, the whole would be barred by the discharge.

The residue of the instruction, we think, fails to obviate the error. It holds that if the jury find said debt made up in part of an honest debt, and in part of a fraudulent debt, and are unable to distinguish, or say how much of it was created by fraud, their verdict must be for the defendant. It is difficult to reconcile this with the former part of the instruction. That, as we have seen, holds that the debt as a whole, or in other words, the whole debt, must be shown to have been created by fraud, to take any part of it out of the operation of the discharge. Here, by implication at least, the jury are told that if they can say precisely how much of the debt was fraudulent, they may find for the plaintiffs as to that. Such apparent inconsistency could only have a tendency to confuse the jury.

But the latter part of the instruction fails to state the law correctly. It was by no means necessary for the jury to be able to say how much of the debt was fraudulent and how much honest, before finding a verdict for the plaintiffs for some amount. If the evidence showed that any part or item was created by fraud, then as to that, the plaintiffs were entitled

to a verdict, although as to other items, the evidence may have left them in doubt and uncertainty.

The sixth instruction is erroneous, in holding that in order to take the debt in question out of the operation of the discharge in bankruptcy, it must appear that the plaintiffs parted with their property *entirely* upon the strength of the defendants' false statement. The rule, as laid down by the leading authorities is, that in order to constitute fraud, " the misrepresentation must be of something material, constituting an *inducement* or *motive* for the act or omission of the other party, and by which he is *actually misled* to his *injury*." 1 Story's Eq. Juris. § 195; Slaughter's Administrator v. Gersen, 13 Wal. 379 ; Halls v. Thompson, 1 Smed. & Marsh. 443, 485. Kerr in his treatise on Fraud and Mistake, page 73, states the rule, perhaps a little more strongly, as follows:  " In order that a misrepresentation may support an action at law, or be of any avail whatever as a ground for relief in equity, it is essential that it should be material in its nature, and should be a *determining ground* of the transaction." By none of the authorities, however, is it held, that the misrepresentation must present the sole and exclusive motive by which the party defrauded is induced to act. The motives of human action are complex, and often spring from a great variety of considerations; and it perhaps can never be said with strict accuracy, that a given action is entirely and exclusively the result of a particular motive or inducement. It is sufficient if it appears that the misrepresentation is the determining ground of the action, although it may not be its sole and exclusive ground.

The seventh instruction holds that if the defendants, *at the time of making the different purchases*, out of which the debt in question arose, made such purchases in good faith, intending to pay for the same, and did not make any false statements respecting their financial standing or ability, to induce the plaintiffs to sell them the goods, the verdict should be for the defendants. The misrepresentations relied upon by the plaintiffs were contained in the written statement made by one of the defendants at a date prior to any of these purchases. It is not clear that any goods were purchased at the time that writ-

ing was signed, but afterwards, from time to time, covering a period of several months. The defendants bought goods of the plaintiffs on credit, thereby creating the indebtedness sued for. . The purpose of the statement, as appears by its own terms, was to obtain credit with the plaintiffs for goods the de_ fendants might then or thereafter purchase of them. It is clear that the plaintiffs had a right to rely upon representations thus made in giving credit, not only for purchases made simultaneously with the statement itself, but for those subsequently made. The instruction, however, as it would naturally be understood, confined the attention of the jury, in the matter of each particular purchase, to such misrepresentations as may have been made at the time of such purchase. In this it was manifestly erroneous. The question of fraud in this case does not depend upon whether the defendants, *at the time of making the different purchases*, made them in good faith, without any false statements respecting their financial standing or ability, and intending to pay for the same, but upon whether, in the writing set out in the plaintiffs' replication, they knowingly made material misrepresentations on those subjects, and the plaintiffs, believing such representations, and relying upon their truth, were thereby induced to sell the goods to the defendants on credit.

For the errors in the foregoing instructions to the jury, the judgment will be reversed and the cause remanded.

<div align="right">Judgment reversed.</div>